IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| DEBORAH FENTON, | : |
| Plaintiff, | : |
| v. | : Action No. 4:19cv72 |
| ANDREW SAUL,<br>Commissioner of Social Security | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

Plaintiff Deborah Fenton ("Plaintiff") filed a complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), that seeks judicial review of the final decision of the Defendant, Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and her claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act ("the Act"). ECF No. 1. Both parties have filed Motions for Summary Judgment, ECF Nos. 13 and 15, with briefs in support, ECF Nos. 14 and 16, which are now ready for recommended resolution.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS**

the Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 15, be **GRANTED**.

## I. PROCEDURAL BACKGROUND

The Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for SSDI on July 13, 2016, alleging on onset date of February 28, 2015. R. at 102-103, 105.[1] Her application was initially denied on December 2, 2016, and again denied upon reconsideration on January 19, 2017. R. at 102-103, 116-117. Plaintiff requested a hearing in front of an administrative law judge, which was held on May 17, 2018 before Administrative Law Judge Stewart Goldstein ("the ALJ"). R. at 31. On July 31, 2018, the ALJ issued his decision denying Plaintiff's application. R. at 8-24.

On May 17, 2019, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. R. at 1-6.

After exhausting her administrative remedies, Plaintiff filed her Complaint for judicial review of the Commissioner's final decision on July 12, 2019. ECF No. 1. The Commissioner filed an Answer on November 18, 2019. ECF No. 9. Both parties filed Motions for Summary Judgment, ECF Nos. 13 and 15, and the matter is now ripe for recommended adjudication.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on August 4, 1966, and was 48 years old at the time of her alleged onset date of disability, making her a "younger individual" under the SSA's regulations. *See* R. at 37; *see also* 20 C.F.R. § 416.963(c) (defining anyone under the age of fifty as a "younger person.").

---

[1] "R." refers to the certified administrative record that was filed under seal on July 18, 2019, ECF No. 9, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

Plaintiff has since become a person "closely approaching advanced age." *See* R. at 37; *see also* 20 C.F.R. § 416.963(d) (defining anyone between fifty and fifty-four as "closely approaching advanced age."). On May 17, 2018, Plaintiff appeared, represented by Brian Gillette, Esq.,[2] and testified before the ALJ at the administrative hearing. R. at 31, 34-61. An impartial vocational expert ("VE"), Robert Edwards also appeared and testified. R. at 31, 61-66. The record included the following factual background for the ALJ to review:

## A. Plaintiff's Medical History

Plaintiff's severe medical impairments are lumbar degenerative disc disease, left ankle degenerative joint disease, left wrist degenerative joint disease, Achilles tendonitis, plantar fasciitis, left rotator cuff tendinosis, carpal tunnel syndrome with neuropathy, diabetes mellitus, diffuse idiopathic skeletal hyperostosis, and obesity. R. at 17.

## B. Hearing Testimony

At the hearing, Plaintiff offered the following testimony. She was 51 years old, had completed high school, and lives on her own. R. at 34-37. Plaintiff never had a valid driver's license, and instead has relied upon family and public transit. R. at 34. She had previously worked as a fast food worker and a housekeeper, but was laid off from each due to lack of available work. R. at 35-36. She had chronic pain in her lower back, hip, leg, ankle, and shoulder. R. at 39-40, 50. She experienced swelling in her hands, arms, left ankle, and left leg. R. at 40-41. She had neuropathy in her hands, and had arthritis "everywhere," with symptoms in her hands, knees, and ankles, and had vertigo and dizziness. R. at 41-42, 50. Plaintiff spends eight to ten hours a day reclined in a chair to elevate her legs. R. at 41. She could neither stand for more than 15 minutes,

---

[2] Plaintiff is now represented by Robert W. Gillikin, II, Esq.

nor sit more than 25 minutes, without pain. R. at 42. Plaintiff could not lift anything heavier than a gallon of milk, do the dishes, change the sheets, or vacuum. R. at 45-47. She had trouble bending over, picking up small items, going up and down stairs, walking the length of a city block, lifting objects, sleeping, concentrating, grocery shopping, and riding in a car. R. at 44-48, 51. She was able to bathe, dress, and do some cooking herself. R. at 46. Plaintiff's daughters help her with some cooking, the dishes, laundry, changing sheets, and grocery shopping. R. at 46-48. Her grandchildren help her put on socks and tie her shoes. R. at 58. Plaintiff testified to drinking multiple alcoholic beverages a week. R. at 55-57.

Plaintiff used a brace and a walking boot. R. at 44, 59. Plaintiff received the boot from medical providers at Virginia Commonwealth University in March, 2017. R. at 44, 59. Plaintiff testified she wore the boot for about a month thereafter. R. at 44. Plaintiff wore the boot from March, 2017 to roughly August, 2017, and after for a few days every two weeks. R. at 59-60. Plaintiff stated that the boot was not helpful, R. at 44, but also stated that it alleviated pressure, pain, and swelling in her leg and foot. R. at 60-61.

Plaintiff also used of a cane. R. at 48-49. Plaintiff began using her mother's cane without medical instruction. R. at 48. She stated that the cane relieved pressure from her legs. R. at 49. A doctor instructed Plaintiff to continue use of her cane to help alleviate pain from wearing a brace and boot. R. at 49. Plaintiff received a prescription for a cane in April of 2018. R. at 51, 66.

At the hearing, the VE was presented with a total of six hypotheticals from the ALJ and Plaintiff. The first hypothetical presented asked the VE to consider an individual with Plaintiff's age, education, and job history limited to performing light work as defined in the regulations, except that individual should only stand or walk for two hours in an eight hour work day; cannot

climb ropes, ladders, or scaffolds; can only occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; and can frequently reach, handle, finger, and feel. R. at 62-63. The VE testified that such an individual could perform work as an office helper, small products assembler, or a hand packer. R. at 63. For the second hypothetical, the VE testified that assuming the same hypothetical individual but reducing the exertion level from light work to sedentary would preclude the individual from performing work as a small products assembler or a hand packer, but that person could perform work as an addressing clerk or a bench assembler. R. at 64. For the third hypothetical, the VE testified that the addition of a cane to the sedentary jobs would not impact his testimony. R. at 64. For the fourth hypothetical, the VE testified that, for the light exertion jobs, use of a cane for ambulation would not impact his testimony, but use of a cane for standing would be prohibitive. R. at 64-65. For the fifth hypothetical, the VE testified that the addition of a walking boot to the light exertion jobs would not change his analysis. R. at 65. For the sixth hypothetical, the VE testified that elevation of an individual's feet to waist level or higher would not be problematic if it was for ten percent or fewer of a shift, but any more than that would be a work-eliminating job modification. R. at 65-66. Finally, the VE testified employers allow less than two days of absence per month. R. at 66.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine

whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-00357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 28, 2015. R. at 17. Second, the ALJ determined that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, left ankle degenerative joint disease, left wrist degenerative joint disease, Achilles tendonitis, plantar fasciitis, left rotator cuff tendinosis, carpal tunnel syndrome with neuropathy, diabetes mellitus, diffuse idiopathic skeletal hyperostosis, and obesity. R. at 17. These impairments were found to be severe as they caused significant limitations in the Plaintiff's ability to perform basic work activities. R. at 18. The ALJ determined Plaintiff does not have any impairment or combination

6

of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, subpart P, appendix 1, such as those under musculoskeletal system under Listing 1.00, and neurological disorders under Listing 11.00. R. at 19.

Third, the ALJ determined that Plaintiff had the RFC to perform light work as defined by the SSA regulations, except that Plaintiff could only stand and/or walk two hours in an eight-hour workday; could occasionally engage in the climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; could frequently engage in frequent reaching, handling, fingering, and feeling; and could not engage in climbing ladders, ropes, or scaffolding. R. at 19.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that "as for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the objective medical evidence reflects few abnormalities that are mild to moderate in severity and she has required only infrequent conservative medical treatment." R. at 20. The ALJ found the evidence pertaining to Plaintiff's left ankle arthritis was minimal. R. at 20. He noted two records supporting it. First, an initial complaint at VCU Orthopedics Clinic for a twisted ankle, where she demonstrated full range of motion, normal strength, and improving pain. R. at 20. Second, a follow-up where Plaintiff demonstrated slightly decreased subtalar motion in her left ankle, but intact motor strength and sensation. R. at 20. Regarding Plaintiff's claims of numbness and tingling in her hands and wrists, the ALJ noted that physical examination revealed normal anatomy, brisk capillary refill, and palpable pulses with positive Tinel's at the right wrist and questionable Tinel's at the left wrist, along with a full range of motion and intact

sensation. R. 20. The Plaintiff was assessed with carpal tunnel and told to use wrist splints. R. at 20.

The ALJ next discussed consultative medical examiner Dr. Christopher Beal's examination of Plaintiff, in which Dr. Beal opined that Plaintiff's hand numbness was most likely due to CTS, and that Plaintiff possibly had rheumatoid arthritis of the hands. R. at 20. The latter diagnosis was never confirmed, and the Plaintiff demonstrated intact motor strength and sensation, and adequate gross and fine motor dexterity. R. at 20. During the same examination, Dr. Beal noted that Plaintiff complained of knee pain, favored one leg while walking, and used a quad cane, but he also noted that only a single point cane was necessary. R. at 20. The ALJ next considered a later visit to her orthopedist. R. at 20. Plaintiff's orthopedist observed Plaintiff was walking with a regular shoe and not favoring either leg. R. at 20. The orthopedist noted chronic swelling in the ankles, mild tenderness in the posterior tibial tendon on the left, and tenderness in the mid instep consistent with plantar fasciitis, but also an intact range of motion and sensation. R. at 20. Radiographs of the left foot and ankle showed normal bone alignment, moderate osteoarthritis of the tibiotalar joint and other phalangeal joints, enthesopathy of the calcaneus, and mild midfoot arthritis at the first MTP joint. R. at 21. Plaintiff was then diagnosed as having tibial tendinitis with plantar fasciitis, and she was given a walking boot. R. at 21. At a follow-up, Plaintiff indicated she was not using any ambulatory aids, could walk up to five blocks, navigate stairs, and sit for less than an hour. R. at 21. Radiographs showed anatomic alignment with well-preserved joint space in the left knee, and mild osteoarthritic and anatomic alignment in her right foot. R. at 21.

The ALJ noted that Plaintiff testified to using a walking boot from March 2017 until September 2017, but now uses it every two weeks for about three to four days. R. at 21. The ALJ also noted that Plaintiff was prescribed a cane for a degenerative disc disease, but that her doctor did not include such in her list of diagnoses. R. at 21. Additionally, the ALJ found the Plaintiff was not forthcoming about her use of alcohol, and noted the Plaintiff did not mention her grandchildren until asked, and then only to describe how they help her. R. at 21. Regarding opinion evidence, the ALJ gave significant weight to the opinion of Dr. Beal, and limited weight to the State agency medical consultants' physical assessment. R. at 21-22.

Fourth, the ALJ determined that Plaintiff was unable to perform any past relevant work based on the vocational expert's testimony. R. at 22.

Finally, the ALJ determined that the Plaintiff's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations. R. at 22-24. Considering the extent such limitations erode the unskilled light occupational base and relying on the vocational expert's testimony, the ALJ determined that work existed in significant numbers in the national economy for Plaintiff based on her age, education, work experience, and RFC, including positions such as office helper, small products assembler, and hand packer. R. at 23. Therefore, the ALJ determined a finding of "not disabled" was appropriate. R. at 23.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a

reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

### A. The ALJ properly used the Grids and the testimony of the Vocational Expert to determine there are jobs in significant numbers that Plaintiff can perform.

After an ALJ determines that a claimant cannot perform any past relevant work, the ALJ must determine at Step Five whether, considering the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other jobs existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If the claimant's residual functional capacity includes a situation where "all or substantially all of the requirements for this level of work" are "impeded" by additional exertional or non-exertional limitations, then the ALJ may use the framework set forth in the Medical-Vocational Guidelines (the "Grid Rules") to determine whether the claimant is disabled. As explained in *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 332 (E.D. Va. 2016),

> The Commissioner, through the ALJ, may meet her burden of proving that significant numbers of jobs exist in the national economy through proper reference to the Grid rules. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983)). The Grid rules provide numbered tables for the sedentary, light and medium levels (Tables 1, 2, and 3, respectively), and separate rules for the heavy and very heavy levels. 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the claimant has sedentary, light or medium exertional capacity, the ALJ must first determine which Grid table to use. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Next, based on the claimant's age, education and previous work experience, rules within the Grid table direct a finding of "disabled" or "not disabled." *Id.* The ALJ must consider the claimant's RFC, age, education and work experience in conjunction with the Grid rules. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

If a claimant's exertional level falls between two grid rules (i.e., light versus sedentary), then the ALJ considers the requirements set forth in Social Security Ruling ("SSR") 82-12 to determine whether the claimant is disabled. 1983 LEXIS 32. SSR 83-12 directs that "if the exertional level falls between two rules which direct opposite conclusions" then:

> a. An exertional capacity that is only **slightly reduced** in terms of the regulatory criteria **could** indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is **significantly reduced** in terms of the regularity definition, it **could** indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

Thus, SSR 83-12 directs the ALJ to consider whether the claimant's exertional capacity is slightly reduced or significantly reduced, and advises the ALJ to use a vocational specialist to determine the remaining occupational base to determine whether the claimant is disabled.

Here, the ALJ found that the Plaintiff had the RFC to perform light work, and the only

impediment to Plaintiff's ability to perform light work was that she cannot stand/walk for two hours in an 8-hour workday.[3] R. at 19. Accordingly, the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of light work would be impeded by additional limitations, and Plaintiff fell between the Grid Rules for light versus sedentary work. R. at 23. Because the Plaintiff's exertional level fell between two grid rules, the ALJ had to consider whether Plaintiff's exertional capacity was only "slightly reduced" which "could" guide a finding of "not disabled, or whether Plaintiff's exertional capacity was "significantly reduced" which "could" justify a finding of disabled. SSR 83-12. Because here, the ALJ's finding of Plaintiff's exertional capacity would direct different conclusions, consistent with SSR 83-12, the ALJ called upon a vocational expert to determine the remaining occupational base to support a conclusion as to disability. The vocational expert testified that Plaintiff would be able to perform the requirements of an office helper, a small products assembler, and a hand packer. R. at 23.

Plaintiff argues that the ALJ's finding that Plaintiff could perform light work impeded by additional limitations is inconsistent with the ALJ's determination that the Plaintiff's ability to perform light work is only slightly reduced, and therefore it was error for the ALJ to apply the Grid Rules for light work and conclude Plaintiff not disabled. Moreover, Plaintiff argues that pursuant to *Bisceglia* the ALJ was required to provide an explicit analysis why the light range of work was not significantly reduced. Plaintiff is incorrect for several reasons.

First, the ALJ's determination that Plaintiff's ability to perform all or substantially all the requirements of light work was impeded by additional limitations is not, as Plaintiff contends, akin to a finding that the exertional capacity is "significantly reduced" and thus requires application of

---

[3] The ALJ found other limitations, but the stand/walk limitation was the only impediment to the performance of light work.

12

the sedentary Grid Rule. This conclusion is not reasonable, because the ALJ specifically only excepted from the light work requirement the fact that Plaintiff was limited to two hours of standing and walking per day. Consistent with the requirements set forth in SSR 83-12, the ALJ properly consulted with the vocational expert to determine if light jobs existed in spite of the recognized limitation. The vocational expert identified three jobs that Plaintiff could perform despite her limitation of standing and walking just two hours a day. R. at 52.

Plaintiff relies on *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 332 (E.D. Va. 2016), to argue that the ALJ erred by failing to provide an analysis as to why the ALJ's finding that "all or substantially all of the requirements of the light range of work have been impeded…does not mean that the light range of work is significantly reduced." *See* ECF No. 14 at 7; *Bisceglia*, 173 F. Supp. 3d at 333-34. In *Bisceglia*, the Court found that it "could not ignore the obvious conflict between the ALJ's finding that Plaintiff's limitation impeded her ability to perform 'all or substantially all of the requirements' of light work, [] and the ALJ's decision not to use the Grid rules for sedentary work." *Id.* at 336. However, unlike the situation here, the ALJ in *Bisceglia* also erred in his RFC determination in the first instance. *Id.* at 331-32. The ALJ in *Bisceglia* failed to reconcile his position giving "significant weight" to the state agency medical consultants' opinions in determining Plaintiff's RFC when those opinions actually found that plaintiff only had the exertional capacity for sedentary work. *Id.* The Court found that in light of the significant weight given to two state agency medical consultants' opinions that Plaintiff could only perform sedentary work, the ALJ needed to explain the "gap" in his decision. *Id.*

Here, Plaintiff does not argue that the ALJ erred in determining Plaintiff's RFC, but rather only argues that ALJ incorrectly applied the Grid Rules. Additionally, the ALJ having excepted

Plaintiff's limitation of two hours standing/walking from the light work requirements, the ALJ prompted testimony from the vocational expert about the standing/walking limitation in accordance with SSR 83-12. The vocational expert testified that even despite the limitation, Plaintiff would still be able to perform the requirements of an office helper, and hand packer.[4] The vocational expert also testified that with respect to the hand packer job, a bench would be available and that the Plaintiff could have a stool or chair available such she could stand or sit during work. R. at 63. Accordingly, the ALJ appropriately relied on the vocational expert's testimony at step five, and did not err in concluding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## B. The ALJ Committed Harmless Error by Failing to Resolve the Conflict Between the DOT Job Description and the VE Testimony.

The ALJ has a duty to identify and resolve all apparent conflicts between the DOT job description and the VE's testimony. *See Thomas v. Berryhill*, No. 17-2215, 2019 U.S. App. LEXIS 1312, at *10-11 (4th Cir. Jan. 15, 2019), *as amended* February 22, 2019; *Pearson*, 810 F.3d at 208 (quoting SSR 00-4p, 2000 SSR LEXIS 8, *9). Plaintiff argues that the job of "small products assembler" identified by the vocational expert as consistent with Plaintiff's limitations directly conflicts with the DOT/SCO. Plaintiff argues that the job "small products assembler" requires "constant" reaching, handling, and fingering" but the ALJ's RFC limited reaching, handling, and fingering to only "frequent." ECF No. 14 at 4. Plaintiff is correct and the ALJ erred by not resolving the obvious conflict.

However, the ALJ's error is harmless because the vocational expert identified two other

---

[4] The ALJ also determined Plaintiff could perform the job of a small products assembler, but for the reasons noted in Section V.B., *infra*, the Court does not consider that job for the purposes of this analysis.

14

jobs that did not have a conflict. *Arguello v. Saul*, No. 4:19cv42, 2020 U.S. Dist. LEXIS 47670, at *30-31 (E.D. Va. Mar. 2, 2020) (holding the ALJ erred by not limiting Plaintiff to an RFC with only frequent handling, but that such error was harmless because the ALJ's determination that Plaintiff could perform her past relevant work would not have changed even with the limitation); *See also Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (finding that the harmless error rule applies in social security cases). Although the ALJ failed to resolve an obvious conflict with respect to the "small products assembler" position, the ALJ satisfies his burden at Step Five, so long as there is at least one occupation in significant numbers in the national economy. 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Commissioner's Motion for Summary Judgment, ECF No. 15, be **GRANTED**, Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may

respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

It is so **ORDERED.**

/s/ Lawrence R. Leonard
LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 30, 2020

16